```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
                        SOUTHERN DISTRICT
```

```
- - - - - - - - - - - - - - - - x
                                 :
KNOWLEDGE ECOLOGY INTERNATIONAL, :
                                 :
          Plaintiff,             :   Case No. 20-02927-PJM
                                 :
      v.                         :
                                 :
NATIONAL INSTITUTES OF HEALTH,   :
                                 :
          Defendant.             :   Greenbelt, Maryland
                                 :
- - - - - - - - - - - - - - - - x   December 22, 2021
```


**TELECONFERENCE**


```
 BEFORE:  THE MAGISTRATE JUDGE CHARLES B. DAY

 APPEARANCES:                 KATHRYN R. ARDIZZONE, ESQ.
                              1621 Connecticut Avenue NW
                              Suite 500
                              Washington, DC 20009
                                 On Behalf of the Plaintiff

                              ALAN LAZEROW, ESQ.
                              United States Attorney's Office
                              36 S. Charles Street
                              Baltimore, MD 21201
                                 On Behalf of the Defendant

 Audio Operator:              In Chambers

 Transcription Company:       CompuScribe
                              P.O. Box 789
                              Cheltenham, Maryland  20706-9998
```


```
Proceeding recorded by electronic sound recording,
transcript produced by transcription service.
```

I N D E X

                                                                    Page

Preliminary Matters                                                    3

Comments by Kathryn Ardizzone, Esq.
    Attorney for the Plaintiff                                         3

Comments by Alan Lazerow, Esq.
    Attorney for the Defendant                                        16

Further Comments by Kathryn Ardizzone, Esq.                           25

Comments by the Court                                                 28

Keynote:  "---" indicates inaudible in transcript.

1                          P R O C E E D I N G S

2        (Whereupon, the teleconference began.)

3            THE COURT:  Okay, we are on the record in the case

4    of Knowledge Ecology versus NIH.  Case number 20-2927.  If I

5    can have counsel identify themselves for the record.

6            MS. ARDIZZONE:  Good afternoon, Kathryn Ardizzone

7    for Plaintiff Knowledge Ecology International.

8            THE COURT:  Thank you.  Welcome.

9            MR. LAZEROW:  Good afternoon, Your Honor, it is

10   Alan Lazerow from the U.S. Attorney's Office for NIH.

11           THE COURT:  Good afternoon.  Welcome.  Okay, I have

12   received and reviewed your papers regarding ECF number 8.

13   Plaintiff's motion to expedite release of records and for

14   scheduling order.  So it is Plaintiff's motion, I will give

15   Plaintiff first and last opportunity to make argument.

16           MS. ARDIZZONE:  May it please the Court, Counsel.

17   We are here today about matters of the upmost interest to the

18   American public and they are also extremely time sensitive.

19   The records we are seeking pertaining to the NIH's response

20   to the COVID 19 pandemic and its efforts to secure access to

21   COVID 19's vaccines and treatments and diagnostics, laws that

22   will be help put an end to the pandemic that has claimed

23   800,000 American lines and transformed nearly ever facet of

24   American life.

25           We are also seeking records related to how the NIH

1   performs its statutory duties and possible reasons that it is

2   refusing to exercise existing legal options and its power to

3   utilize right now to protect Americans from the unreasonable

4   prices of tax payer funded inventions.  This also is one of

5   the most pressing issues of our day.  Eight out of ten

6   Americans polled said that the most important policy priority

7   for them is lowering the excessive price of prescription

8   medicines.  And 1 out of 4 to 1 out of 5 Americans do not

9   take their prescribed medicines as their doctor prescribed it

10  due to cost because they cannot afford to do so.  Which is

11  harming health outcomes in the United States.

12          KEI has a very strong track record of using

13  information obtained under the Freedom of Information Act or

14  the FOIA to inform and influence the policy debates and

15  public debates of matters of national concern.  Most recently

16  with respect to the pandemic, we have been much more

17  successful in our effort to obtain records from the

18  Department of Health and Human Services and the Department of

19  Defense, which together lead Operation Warp Speed.  The Trump

20  administration initiative to fund the development of vaccines

21  and treatments on a rapid basis.

22          And in June of 2020, we were the first organization

23  to obtain Operation Warp Speed contracts and using our

24  subject matter, expertise on intellectual property law, we

25  informed the public through our relationships with media

 1  outlets such as Axios and National Public Radio, that

 2  Operation Warp Speed was using a loop hole to weaken public

 3  interest safeguards that are normally prescribed by Federal

 4  law in the results of these massive contracts --- in some

 5  cases a billion dollars to pharmaceutical companies to fund

 6  the development of vaccines.

 7          In a case where access and affordability would be

 8  extremely important, the Government was weakening its rates.

 9  And so, we shared this with major news outlets.  They

10  published our analysis in the records and Congress questioned

11  shortly thereafter the head of BARTA(sic) which is part of

12  HHS and executes the contracts and Francis Collins the

13  director of the NIH, about why it used a loop hole to weaken

14  public interest safeguards.

15          --- we have obtained 400 contracts which we publish

16  on our website and we also maintained a spreadsheet of

17  metadata and analysis of the contracts that has been

18  consulted by policy makers, members of the press and activist

19  because there has been enormous public interest expressed in

20  the terms of the contracts, which is similar to what we are

21  trying to obtain but have been unable to obtain from the NIH.

22  And we have been quoted in at least 191 news articles about

23  intellectual property rates in the pandemic since the start

24  of the pandemic.

25          But it has been a very different experience with

1    the National Institutes of Health and the Defendant has

2    frustrated the intent of the FOIA and made it enormously

3    difficult to obtain any information of substance and value on

4    a timely basis.  But the issue that we are here to discuss --

5    we are all here to decide is the appropriate processing rate

6    and whether the Defendant's proposed rate of production of

7    300 pages promotes for 2 consolidated lawsuits seeking

8    information of important national and time sensitive issues

9    satisfies the purpose and time constraints of the FOIA which

10   are the law of the land when there are more than 312,000

11   pages outstanding to be prefaced(sic).

12            At the Defendant's proposed rate, that would result

13   in an 86 year production time line, if we do not narrow the

14   scope of any of the outstanding requests.  But we have

15   expressed our willingness to do so.  But we don't want to

16   lose the public interest in timely access to these records of

17   great importance to the American public.  So we sent a

18   detailed proposal to the NIH about the possible ways to

19   narrow the scope of this request that we recently learned has

20   296,000 pages of outstanding records.

21            We have not yet heard back from the NIH about how

22   that would impact the page count.  And we are optimistic

23   about that.  But even assuming best case scenario in that we

24   can reduce 75 percent of the outstanding pages, at

25   Defendant's proposal, you would have a production time line

 1    and litigation time line of 21 years.  And that is in no way

 2    permitted by the FOIA which is not a loose set of guidelines

 3    for agencies to ignore.  It is the law of the land, as I have

 4    said and it recognizes not just the public's access to

 5    information about what the Government is doing but also the

 6    importance of timely access to information because stale

 7    information is of little or no value.

 8             Your Honor, if I can just give you an example of

 9    how the NIH's unreasonable delay has frustrated the intent of

10    the FOIA.  Early in the pandemic, we learned that there is an

11    NIH funded treatment called Remdesivir, that would be really

12    important because it was one of the only treatment options

13    for the only FDA authorized treatment options for COVID 19.

14    There was an enormous public interest in the terms in which

15    the NIH might have held rights on Remdesivir because the NIH

16    helped fund its development.

17             And there was a letter sent by State Attorney's

18    General including the current secretary of HHS Xavier

19    Becerra, then he was the Attorney General of California

20    stating that the Government should exercise margin rights to

21    expand access to Remdesivir because access was limited.  We

22    had submitted -- as soon as we learned that it was --- in

23    March of 2020, we submitted a FOIA requested.  In --- paper,

24    which was published by the *Washington Post* stating that we

25    would update the paper once we learned more information

1    through the FOIA.

2           But the NIH quickly acknowledged it and granted us

3    expedited treatment but six months into the pandemic, we were

4    being approached by CNN about the NIH's role in Remdesivir

5    and we could not answer their question.  We could only say

6    that our request was pending because the NIH still had not

7    acted on it.

8           So a public debate was relevant in the summer of

9    2020, it cannot be --- back.  It is wordy --- and hampered by

10   lack of access to information and it cannot be wound back as

11   the case law recognizes.  Because it was important in at a

12   type back then, and now we are nearly two years into the

13   pandemic and society has moved on to other issues.  So it was

14   the less informed and less debate than it could have been.

15          But we have --- request at issue and we have

16   extensively briefed the public interest in them.  And I am

17   being long-winded, so I will just move on to the legal -- oh

18   sorry, I do want to update the Court about information that

19   has come to light since we have briefed the motion to

20   expedite.

21          So when we briefed the motion to expedite, we had

22   an estimated page count for all but one of the requests.  We

23   had repeatedly asked the NIH to provide an estimated page

24   count for request number 54015.  Which seeks records related

25   to Active, which is an NIH program to coordinate the

1   development of vaccines and treatments for COVID 19.

2   Initially the NIH denied that request in full even though we

3   submitted the FOIA request after the program was launched,

4   the NIH said it was still being worked out so everything was

5   exempt.

6           So we have appealed that saying, not just as that

7   defies logic but here is an example of a contract that was

8   already executed.  It is responsive to the request and it is

9   not pre-decisional, it has been executed.  So, we have filed

10  an administrative appeal.  We have put that in our complaint.

11  In the answer, NIH still stated that it had not wrongfully

12  withheld information.

13          But in February of 2021, we convinced -- we got

14  them to admit that it may have wrongfully withheld

15  information and it would perform a search.  But by the time

16  that we needed to brief the motion to expedite because time

17  was -- crucial time was passing, it didn't give us an

18  estimated page count.  So we had to brief the issues without

19  that information.

20          Not until October of 2021, just a few months ago

21  did the NIH inform us that there are 296,000 pages responsive

22  to that request.  That is a fact that is transformational.

23  Because we have extensively surveyed the case law.  And the

24  FOIA is (technical interference) -- the FOIA's time

25  constraints which are extremely important and of greater

1  importance when requests are entitled to expedition, which we

2  submit they are, do not permit a five year long time span, an

3  eight year long time span of production.  Certainly not a 21

4  year time span of production which is the best case scenario.

5          So it is a factor that has direct bearing on how

6  the Court must decide the legal issues at hand and how the

7  courts do decide the legal issues at hand.  And the Court

8  should have had the benefit of that information and so should

9  we.  So if we have a -- if we had --- considered the page

10  count that we requested Your Honor, to order, and it was

11  based on the number of pages that we thought were outstanding

12  which was 20,000.  That number is many times that amount.  So

13  if we had known that, we would have requested 2,000 per month

14  in the 2927 lawsuit, which relates to COVID 19 and has a

15  heightened time sensitive nature, because it relates to the

16  pandemic.

17          And we would have requested -- we would have

18  requested 500 pages in the 2825 lawsuit.  So, we wanted to

19  highlight that issue for Your Honor.  The other important new

20  fact does come to light is that the director of the NIH,

21  Francis Collins announced his departure from the NIH in

22  October of 2021.  He will be departing by the end of the

23  year.  And the oldest request at issue from 2018 pertains to

24  his correspondence of the pharmaceutical industry.

25          If the requestor can file a request in 2018, and

1    then  not even obtain records until the director of the NIH

2    has left his position and there is a new director, his legacy

3    is not as important -- the FOIA is eviscerated in that case.

4           THE COURT:  Isn't that the same request in which

5    you did not seek expedition?

6           MS. ARDIZZONE:  Yes.  So the -- I -- we did not

7    originally because we did not foresee a four year time line

8    for production.  And at that point, we did not have that

9    information that he would be leaving office imminently.  So

10   this is new information.

11          So, the legal analysis that the Court must apply

12   arises from the time constraints of the FOIA and the cases

13   that have analyzed the question before us which provide

14   persuasive case law because they mostly have been discussed

15   in the United States District Court for the District of

16   Columbia but provide helpful parameters.  The FOIA recognizes

17   the public's right to timely access to information which is

18   the structural necessity in a functioning democracy.  There

19   is an overriding and compelling public interest in

20   fulfillment of that.

21          So it does have time constraints for a non-

22   expediting request.  That means, that the agency must respond

23   to the request for records within 20 working days.  And then

24   thereafter, must make the records promptly available.  What

25   that means is context dependant, but it means typically weeks

1  or months not days or years and the cases I have reviewed, it

2  has not been more than 3 years generally.  It certainly has

3  not been 8 years -- 10 years especially when there is a

4  compelling public interest in the records sought.

5          For an expedited request, the expedited processing

6  provisions were enacted later through an amendment, but it is

7  a heightened standard.  The spectra of information becoming

8  stale and of --- value increases.  So Congress underscored

9  the importance of timely information where the request that

10 can demonstrate the compelling need.

11         For the first request in the 2927 lawsuit, which

12 sought records related to Remdesivir and the COVID 19

13 pandemic context, the NIH did grant a request for expedited

14 processing.  So recognizing that we have shown a compelling

15 need. The later request related to the pandemic which had the

16 same  material facts.  It either was silent on our request

17 for expedited processing or denied it, which we submit was in

18 error.  But anyway, the rebuttable presumption arises in

19 those cases if records are not provided within 20 working

20 days.

21         As I said, there is no one rigid formula you can

22 apply.  It is context specific.  So, in a case where there is

23 only 800 pages outstanding, even if there is a very highly

24 important public interest as there was in the American

25 Immigrant Council versus DHS, 400 pages was ordered as an

1  appropriate processing rate because there were only 800 pages

2  outstanding.  Meaning that the requestor would have a full

3  set of records in two months.  That was found to be

4  reasonable.

5        But other cases such as <u>Huddleston</u> <u>versus</u> <u>the</u> <u>FBI</u>,

6  were the agency complained of the impact of COVID 19 on its

7  operations.  That was only one concern that the Court

8  balanced and it also considered the FOIA's timing constraints

9  and said that the Defendant's proposal -- this would --

10       THE COURT:  Uh oh.  Looks like I lost you.  Are you

11 still there Mr. Lazerow?

12       MR. LAZEROW:  I am here.  Can you hear me, Your

13 Honor?

14       THE COURT:  Yes, I can.

15       Ms. Ardizzone? We lost you.  Hopefully she will

16 come back --

17       MS. ARDIZZONE:  ---

18       THE COURT:  There you are.  Okay. You froze on us a

19 little bit there.  High winds, I know, but go right ahead.

20       MS. ARDIZZONE:  Sorry I am just trying to --- the

21 fact that it is context dependant.  It depends on factors.

22 The courts have identified in a number of cases, you review

23 the case law and they start to emerge.  One of them is of

24 course, the public interest and whether the requests were

25 entitled to expedition, which we submit ours were.

1          So in a case that did not order an expedited

2    processing rate which is <u>Middle East Forum</u> which these cases

3    are all in the motion, the Court said we are not going to

4    order an accelerated rate of production here.  That is

5    because we may have if the requests were entitled to

6    expedition but none of them were.

7          In another case, <u>Negli(sic) and Trevera(sic)</u>, the

8    requestor was only seeking records related to their personal

9    interest and there was no greater interest in the public at

10   large that would be served by an expedited rate of

11   fulfillment.  So --

12         THE COURT:  I think I have to give you about two

13   more minutes.

14         MS. ARDIZZONE:  Okay.  So it depends on the

15   context.  It depends on the public interest.  The time

16   sensitive nature of an ongoing event of International

17   concern.  Whether the request which were entitled to

18   expedition, which the ones we are seeking an accelerated rate

19   from what would be the normal case, were entitled to

20   expedition.

21         Whether -- another factor that the NIH did not

22   acknowledge was the fact that there is overlap between our

23   requests and the 2927 lawsuit about the NIH COVID 19 response

24   and any increase in the number of requests that it received

25   because of the pandemic.  Because naturally the public is --

1  it only underscores the public interest in records about how

2  the NIH's responds to the pandemic and if it fulfills our

3  requests it will help do the work of fulfilling other

4  requests in the queue.  Not only because we publish our

5  information and get the information to the public through our

6  media channels and our website but because it can directly

7  provide those records to others.

8         It is defending a lawsuit right now brought by

9  public citizen for one FOIA request that is related to the

10 active partnership.  It is almost identical to 54015.  The

11 only case discussion if you can even call it that, that the

12 Defendant provides in its opposition, essentially argues a

13 court ordered us to provide 300 pages a month in this case

14 called Daily Caller.  The Plaintiff didn't agree to that.

15 But the Court ordered it in that case and so that should be

16 the processing rate in this case.

17        But it failed to mention the fact that that order

18 came from a --- order that didn't educe the Court's reasoning

19 or rationale, but more importantly that case had only 4,200

20 pages outstanding.  That was an appropriate processing rate

21 because it would have resulted in a production time line of

22 14 months.  We have 75 times more pages outstanding in this

23 case.  So you can't compare apples to oranges.  That is --

24 that is not the case analysis and that is not how courts

25 decide the issue.

1       If the Court orders 2,500 pages a month, which is

2   2,000 in COVID related case and 500 a month in the non-COVID

3   related case, that would result in 2.6 year time line, which

4   is not within the realm of what is reasonable.  If the

5   Court's production stands -- I mean, if the Court's rate of

6   production stands, that is a 20 year -- 21 year time span and

7   that would be a truly extreme and outrageous order that would

8   set a very harmful precedent to people trying -- to agencies

9   that would prefer secrecy.

10      THE COURT:  And I think your time is up.

11      MS. ARDIZZONE:  Okay.

12      THE COURT:  Thank you.

13      MS. ARDIZZONE:  Thank you, Your Honor.

14      THE COURT:  I will hear from the Defense.

15      MR. LAZEROW:  Thank you, Your Honor. I want to

16   three things.  I wanted to update the Court as where things

17   stand visa vie, the NIH FOIA office since we are now some

18   time after the papers were filed.  I want to address some of

19   the cases that Plaintiff cites and why the Court should sort

20   of disregard them.  And three, I want to address the -- the

21   couple other issues which -- because there are issues not

22   just relating to the processing count but the processing

23   issue but there are also issues about how the information is

24   being processed.

25      And the one thing I want to say at the outset is,

1    we are talking about a rate of processing, not a rate of

2    production.  And so to the extent that I say production, I

3    really mean processing.  And that is a distinction because

4    the FOIA office could review a document and decide that the

5    entire thing is entitled to be withheld.  That is a page that

6    is processed but would not necessarily be turned over to a

7    FOIA requestor.  And I just wanted to get that out of the way

8    because I am sure I am going to say production at some point

9    when really I mean processing.

10            It is no -- it is no secret that we are all still

11   dealing with this pandemic.  It is in the newspapers, it is

12   on the news, it is on my Twitter feed.  It is dominating the

13   attention of all of us and it is dominating the attention of

14   NIH and the -- and the American Healthcare Community.  So

15   unsurprisingly folks like KEI who are interested in the

16   American Healthcare Community and COVID 19 specifically, are

17   all the more so and still interested in the work that NIH is

18   doing and that has continued to exacerbate things at the NIH

19   FOIA office. Just by the numbers.

20            NIH pre-pandemic was actively litigating three FOIA

21   lawsuits.  NIH typically was sued about once a month.  Sorry

22   about once a year under FOIA.  At the time we filed our

23   opposition, that number was 15 active litigations.  Less than

24   six months later, that number is at 33 active litigations.

25   What we put in our papers was we said, Your Honor, if the

1    Court was going to require processing more than 300 pages per

2    month, NIH would have to devote a fourth person -- there were

3    already three senior staff members whose job was solely

4    responding not just to FOIA requests or expedited FOIA

5    requests, litigation based FOIA requests, where we said a

6    fourth person would have to be detailed to cover that.

7         Well, NIH has been processing 300 pages a month in

8    this litigation and that still has happened.  There has been

9    a fourth person that has been detailed to only work on

10   litigation requests.  The back log as a result has increased

11   from 491 overdue requests to 639 overdue requests.  Before

12   the pandemic NIH was processing in litigation 300 pages per

13   month.  At the time that we filed our opposition, that number

14   was 3,200 pages per month.   So more than 10 times that.

15   Less than 6 months later, that number is 6,250 pages per

16   month.

17        So, it has almost doubled again.  So, if this

18   hearing was back in March, our position would have been was

19   then and would still be that NIH can only process 300 pages

20   per month and things have only gotten worse for NIH and it

21   has only gotten worse as a result for the NIH FOIA office.

22   So that is sort of just the quick update as to where things

23   stand at NIH and in the FOIA office.

24        Now, Plaintiff refers to a number of cases where

25   some court ordered some agency to produce more than 300

1    pages.  Some of them were COVID era cases.  A lot of them

2    were not.  But it is not -- but the most important part for

3    me to highlight to the Court is that this is not KEI versus

4    the FBI.  This is not KEI versus HHS or DOD.  It is frankly

5    of no surprise to me that they are getting better service, so

6    to speak, faster response from those agencies.

7              Because NIH and not those agencies is the Defendant

8    in this case.  And why is that important?  Well, when someone

9    makes a FOIA request, the FOIA offices go to the individuals

10   with the relevant information, the relevant programs.  And

11   those foot soldiers, so to speak, the folks on the ground at

12   the agency are -- they have to work with the FOIA office.

13   They have to search their e-mails, they have to look through

14   their physical files.  They have to have discussions about

15   whether to apply a particular FOIA exemption.

16             The difficulty here unlike any other agency is that

17   the people with the information relevant to COVID related

18   FOIA requests are the very experts leading the agencies and

19   the Nation's research efforts regarding the pandemic.  So,

20   not to undermine or belittle FOIA or its purposes in any way,

21   but any time that these people -- these foot soldiers so to

22   speak on the ground as I will call them, spend working on

23   responding to FOIA requests, is times that they are not spent

24   working on the pandemic.

25             So, the best bench marks are not pre-pandemic cases

1   or even pandemic cases involving different agencies, it is

2   pandemic cases involving NIH.  What I can tell the Court and

3   represent to the Court is that in almost every case, NIH is

4   processing 300 pages per month.  And I say in almost every

5   case, I am actually not aware of a case where they are

6   producing more to anybody else but you know, less I say in no

7   case are they producing more and somebody finds a case where

8   they are.  I will say that in almost every case, NIH is

9   processing 300 pages per month.

10          I can represent to the Court that NIH spreads these

11  cases amongst its agency attorney's staff as the Court can

12  imagine.  The agency council working with me on this case,

13  has four other pieces of active FOIA litigation that are in

14  processing.  Each of them are being processed at a rate of

15  300 pages per month.  So I think in Plaintiff's motion they

16  said a floor of 500 pages per month.  And I know now they

17  said well it would have been 2,500 -- 2,000 pages per month

18  but those are arbitrary because a lot of the cases don't deal

19  with pandemic related cases and they don't deal with NIH.

20  And the specific issues that NIH is facing.

21          Now, to be fair, in those other cases, I would --

22  suffice it to say the number of outstanding documents is

23  probably less than there are in this case.  And we will talk

24  about how I think that -- how I think that gets fixed.  But

25  frankly it is not NIH's fault that Plaintiff's FOIA request

1    has many more responsive pages then other cases and the point

2    that we are making here is the effect on the agency if

3    ordered to produce or rather process more than 300 pages per

4    month.

5            That effect is going to be the same regardless of

6    whether the number of outstanding pages is 1,500, 15,000 or

7    15 million.  So, we think the best benchmark is the other

8    cases where that NIH is producing documents in right now and

9    those cases -- again every case that I am aware of but I will

10   say almost every case NIH is processing 300, 300 pages per

11   month.

12           Now, let me just say that you know, yes there was a

13   response that I think the number of potentially responsive

14   documents was 296,000.  That is a -- that is a big number.

15   We sent -- we have been in contact and we have suggested,

16   well if you had a secondary search term that number goes from

17   296,000 to 24,000.  That is one way it could get narrowed

18   down.

19           A day or two ago, we did receive a proposal from

20   the NIH about how to possibly narrow it down again.  Listen,

21   these requests need to get narrowed down but I will say is

22   that KEI about a month ago came to us and said, we actually

23   want to re-prioritize from one of the requests that there

24   were a large number of documents outstanding and we want to

25   switch to a different request.

1           So because we are currently processing a different

2    request where I think there is maybe 12 or -- 1,100 or 1,200

3    pages outstanding, that will take a couple of months unless

4    the Court orders otherwise.  That gives us time to negotiate

5    these issues.  I did just want to address this one more point

6    about how the -- about some requests about how the documents

7    should be produced and then maybe offer a proposal to the

8    Court to the extent the Court doesn't already know what it is

9    going to order.

10          The two issues I wanted to address are Plaintiff's

11   request not in its FOIA request but during litigation that we

12   OCR or make the documents text searchable.  And the fact that

13   it wants the documents at the request, again not in its FOIA

14   request but during litigation to prioritize certain -- call

15   it reverse chronological order.  What FOIA requires is the

16   agency to provide documents in the form or format requested

17   by the requestor and these are the important words, if the

18   record is readily reproducible by the agency.

19          So what has happened here is NIH goes to its

20   components, goes to its people, it gets documents, it loads

21   it in to its reviewing system withholdings are made,

22   redactions are made and then it spits out PDFs that we

23   produced to KEI and every other FOIA request every month.  As

24   a part of that process, the documents are typically scrubbed

25   for metadata, making them unsearchable.

1          Therefore, as they come out of the system, they are

2    not readily producible by the agency in OCR format.  Frankly,

3    I have a license to Adobe.  I get medical records in FTCA

4    cases.  I want to search them.  I can go on there, I can OCR

5    them.  The question is, who should be the one to do that?

6    Again even recognize -- even putting aside the fact that the

7    documents as they exist in the system now are not readily

8    reproducible.  Should it be KEI who is receiving these 300

9    plus pages a month or should it be NIH who is processing just

10   in litigation alone, 6,250 pages.

11         And I assure the Court the amount of pages it is

12   producing in -- outside of litigation is probably many, many,

13   many times that.  It is -- it just knowing how long it takes

14   for me to OCR documents, for an office that is already being

15   crushed to have to take that extra time would add to the

16   crush.  The last issue, relates to reverse chronological

17   order.  The documents are loaded into NIH's -- at least to

18   the request where there are a large number of documents

19   loaded into NIH's FOIA reviewing software.

20         What Plaintiff would have us do is pull all of that

21   out, put everything in different buckets.  This is in the

22   2021 bucket, this is in the 2020 bucket, this is in the 2019

23   bucket.  OCRing documents would be time consuming.  Requiring

24   NIH to do that would be -- I mean, would be frankly

25   impossible.  So certainly they are not readily reproducible

1   by the agency in that format.

2         I think what needs to happen here is I do think

3   there needs to be some schedule under which the parties

4   attempt to narrow the request where are 296,000 pages

5   outstanding and perhaps we can come back to the Court with

6   hey, here is how we have resolved it.  Or if not, here are

7   the parties respective positions on how to narrow this issue.

8   How to narrow these documents or not.

9         In the -- attached to the opposition was a proposed

10  order.  We think quarterly joint status reports where the

11  parties can update the Court as to the status of the

12  productions and be heard as to whether there should be an

13  increase in the processing rate, I think is also appropriate.

14  But NIH is acting in good faith here.  This case is about 8

15  FOIA requests, 3 of which have been cleared off of the table.

16  A 4th one will be cleared off the table in the next 3 to 4

17  months.

18        And once we are able to narrow these other requests

19  down, it will be more manageable.  This is not an 80 year

20  production schedule.  This is -- I don't know if it is one

21  year, three years or what have you.  But I am hopeful that we

22  will be able to narrow this down significantly.  The last

23  thing I will offer the Court and the Plaintiff to the extent

24  this is helpful is that in about 3 to 4 months, we will have

25  4 of the 8 FOIA requests completed.

1          Now, what happens in these cases of course as Your

2     Honor knows is that documents are produced and perhaps a

3     Plaintiff won't challenge redactions or withholdings and

4     perhaps -- or the adequacy of the search, perhaps they will.

5     What might make sense and we would be amenable to doing is

6     once this fourth request is done, it should be again in 3 or

7     so months, we can move to summary -- we -- if Plaintiff -- if

8     Plaintiff challenges the adequacy of the search in cases

9     where there were no documents or challenges the adequacy of

10    the search and withholdings or redactions in -- for requests

11    that there were productions, then we can brief that.  We can

12    Von indexes.

13         And if the Court can tell us that we -- that NIH

14    did what it had to or didn't under FOIA but that is perhaps

15    one way that half of this case could move to summary

16    judgement relatively quickly.  With that, I am happy to

17    answer any questions.  But -- unless the Court has any other

18    questions, I will take a virtual seat.

19         THE COURT:  Not at this time but I do want to give

20    Plaintiff about 5 minutes for rebuttal if you wish.

21         MS. ARDIZZONE:  Thank you, Your Honor.  And I

22    apologize if my thoughts are a little bit --- because I am

23    responding in real time to all of the things that the

24    Defendant's Counsel has stated.  And I think that they are

25    really important and need to be discussed.  First and

1    foremost, what I did not review in the opposition and I did

2    not hear in Defendant's presentation is any acknowledgment of

3    the counter-veiling interesting that the Court must balance.

4    I did not hear any acknowledgment of the time constraints.  I

5    did not hear any acknowledgment of the public interest in

6    fulfillment of the FOIA request on a timely basis.

7              I did not hear any acknowledgment of the overlap

8    between our request and other request outstanding in the

9    queue.  And it stated that the Court should disregard the

10   fact that we have had a better experience in other cases.

11   The case that I discussed at the beginning of my presentation

12   is against HHS and DOD.  They are major funders of biomedical

13   research but they are leading the COVID response because they

14   are executing operation work for these contracts.

15             They are not on some side project.  Now, the impact

16   on the NIH is one of many relative factors but it is not the

17   be all and end all.  I have not read a single case in which a

18   Court accepted an argument that reduced to one factor, the

19   impact on the agency and said that that is an open and shut

20   case.  They have actually said hardship on other requesters

21   is not a voluntarily -- relief that we are seeking because

22   again the public interest may outweigh the impact on the

23   agency as it did in --- democracy project, as it did in

24   Hollison versus FBI, including in the context of COVID 19.

25             If an agency can simply say this would be a burden

1    on us then the FOIA's time provisions would mean nothing.  So

2    it is an incomplete picture of the legal analysis that the

3    Court must perform and it hasn't improved with Counsel's

4    presentation.  Now it did provide some examples of cases that

5    it is defending right now, where 300 pages per month was the

6    norm but I don't think that that is the case in every case.

7         Because one case which is called Leopold versus

8    CDC, a large number of pages were processed to the Defendant.

9    So what matters again is the specifics of those cases.  In

10   three cases, that it cites in its opposition, one of those

11   cases, US Right to Know versus NIH, the docket states that

12   production will not begin until December of -- 28th, 2021.

13   So it didn't even begin yet.

14        But that is a case that the Defendant cited that is

15   making it busy.  And the Plaintiff states in its status

16   report that the NHS has given its records that it has already

17   produced in other lawsuits showing how their synergy

18   between --- are requesting other requests.  And another case

19   Jadhav(sic) versus NIH, the NIH is providing between 300 and

20   500 pages a month.

21        But there the Plaintiff was seeking records -- that

22   referenced himself and he was an individual person.  There

23   was no compelling public interest and ---.  So again it has

24   given a formula devoid of facts, devoid of context and that

25   is not helpful to the Court's analysis.  In saying simply

1   Your Honor, this is difficult for us so this is going to

2   create a burden on other requesters, so you should not grant

3   the relief that the Plaintiff is seeking, this is not an

4   analysis I have ever seen a single legal precedent applied.

5           Regarding -- there is another important matter that

6   I would like to bring before Your Honor's attention.  Up

7   until November -- up until December of 2021, the only request

8   that the NIH was processing was a request number 54587

9   seeking e-mails referring to KEI about the exercise of public

10  interest safeguards under the -- in proxy for the exercise of

11  public interests safeguards under the ---.

12          The NIH estimated that there is 15,000 responsive

13  pages and has been giving us approximately 300 pages per

14  month.  But it has been -- we did not request reverse

15  chronological OCR formatting in our original request because

16  we could not foresee that there were be that many e-mails

17  referencing KEI.  We are adapting to new information and

18  attempting to preserve the value of FOIA because the

19  Defendant's proposal stands, they will take five years or

20  four to five years to fulfill that request alone.

21          We have no --

22          THE COURT:  Time is up.

23          MS. ARDIZZONE:  Okay.  Thank you, Your Honor.

24          THE COURT:  Thank you.  Well, there are a bunch of

25  factors that the Court has to consider here.  Congress has

1    spoken about the need for speed.  And it is also the

2    practical realities of just because there is a need doesn't

3    mean that we can reduce everything to a formula of production

4    over so many months or years or decades even.  Granted our

5    history is it makes an effort not to allow that to happen but

6    as was thrown up by the Defense, as we are talking 15 million

7    items to be processed, there is -- there is a different

8    formula that has to be in play.

9           So quantity is a concern.  A need for the

10   information in a timely fashion is a concern. The host of

11   balancing factors to be involved here, the Defense offers a

12   process of 300 pages per month.  And it talks about that

13   balance approach that we set forth in the Chavari(sic) versus

14   U.S. Immigration and Custom Enforcement, case out of the

15   District of Columbia in 2020.

16          Pointing out 500 pages per month of non-expedited

17   requests in the COVID environment was going on there.  The

18   case was mindful of the impact of the pandemic and relied

19   upon three other recent decisions for that production case.

20   I am persuaded that 2,000 pages per month is appropriate in

21   the absence of more information.  That is 2,000 total.  Not

22   broken out by 2,000 for this case and 2,000 for that case.

23   2,000 total.  And I know that it is a burden upon the

24   Government and NIH to make that happen.

25          Maybe the Government will find a solution, a detail

1    of someone to make that possible.  And while this approach

2    may be ---, it may be an approach that addresses the

3    proffered crush of FOIA work in my opinion that this

4    particular agency is facing.  And there is the need to have

5    more meaningful production to Plaintiff.  And I do need the

6    Plaintiff to set the priority of production where it is

7    doable. Where that won't cause a problem to what is already

8    happening at NIH then, great, let them have some say in terms

9    of what is most important.

10           It is true that the case law supports the notion

11   that an untimely production is no production at all.  Citing

12   that *Washington Post* case of 2006.  And I am satisfied that

13   the statutory requirement has been met.  That is a compelling

14   need entitling the Plaintiff to expedited process of certain

15   requests.  These matters are time sensitive.  And sadly this

16   Court's inability to reach this matter sooner has added to

17   that problem.

18           We in the court as -- are part of the problem.  So

19   as I look at these factors, there has already been a

20   significant delay and there has been some significant

21   production.  So I applaud the Government on that as well.

22   But to the extent that years are required for completion,

23   that is probably not going to be acceptable.  I think there

24   will be a need for quarterly progress reports.  I think that

25   was a good suggestion.  Appropriate.  And as we speak to this

1    OCR issue, you are right, the statute says that the

2    production is to be made in the format requested if the

3    record is readily producible in that format.

4         NIH, a system now scrubs those documents

5    eliminating that mega data which allows for such searching

6    and so the Plaintiff can either have the speed of what is in

7    the works or without that OCR or if you would elect to really

8    insist upon ECR, then it is a do over.  The Defense will get

9    to start over from scratch and so much for your argument

10   about the need for speed.

11        I do want to talk about production in the reverse

12   order of these --- e-mails and if that is what you want,

13   fine.  You set the agenda for the order in which, the

14   priority of which and we will see if that can't be

15   accommodated.  But I think 2,000 reviews per month is a hefty

16   number particularly in this environment, particularly with

17   all that NIH has on its plate.  Particularly as it relates to

18   the dissemination of information or research that NIH has to

19   do to gather this information.

20        Unlike some other agencies where it is warehoused

21   in one central location.  I am moved by many of the arguments

22   that NIH  makes.  But I also agree that it does not take

23   priority over what is the mission and what the FOIA requests,

24   what the FOIA law provides to the Plaintiff.  So, let's back

25   up a little bit and talk about these potential quarterly

1   progress reports.

2                Is that something that you all can work together on

3   and submit a proposed order for signature?

4                MS. ARDIZZONE:  Yes, Your Honor.

5                MR. LAZEROW:  Sorry, just to be clear, when you say

6   a proposed order, are you referring to an order outlining

7   Your Honor's ruling or is it --

8                THE COURT:  No.

9                MR. LAZEROW:  -- the -- is it something the Court

10  would sign off on on the joint status reports?

11               THE COURT:  That is it.  I need a time line for

12  what makes sense for the joint status reports if you will.

13  That is whether you want to talk the first of the month, end

14  of the month, certain day of the month.  What kind of

15  information you are expecting to have produced in those

16  reports.  As it relates to this particular hearing, there

17  will be no written order so to speak.  I will reference the

18  record.  There will be a paperless order basically granting

19  in part this motion that has been filed.

20               But I do want to have some -- I need to have you

21  work together as much as you can.  And that is what I am

22  hoping that the progress reports can do for us, at least in

23  terms of beginning the process and articulating if nothing

24  else the priorities and things like that, that the Plaintiff

25  is going to be contemplating.

1           MS. ARDIZZONE:  Your Honor, excuse me for

2    interrupting.  We are very amenable to this request and are

3    happy to do anything we can to work together and make this

4    easier for Your Honor.  So, for our part, we can do this.

5           MR. LAZEROW:  And of course, the Government will do

6    the same.  I mean, frankly what I am envisioning is just an

7    update as to the status of the productions and allowing the

8    parties to -- I do think, even though the ruling is sort of

9    going the other way, that I do think it will be appropriate

10   to allow the parties to be heard as to whether the

11   productions -- the rate of productions should be increased,

12   if that is what Plaintiff would like or lessened based on

13   whatever and to the extent that there is any of these other

14   issues that come up, like OCRing or reverse chronological

15   order, allowing the parties to be heard.

16          And I assume if the Court wants to get the parties

17   together in this format or otherwise, it would do so -- can I

18   just ask for one clarification.

19          THE COURT:  Yes, but I want to answer the -- or

20   weigh in on the points that you just made.

21          MR. LAZEROW:  I apologize --

22          THE COURT:  I ascribe to all of that.  It very well

23   may be that you have produced by that time, half of 8

24   requests already and they are off the table or at least from

25   your perspective.  Maybe that there are dueling views on what

1    is going on.  My hope is that we will get to a place where it

2    will not be as onerous to do some things here.  It may be

3    that there are other demands that are coming into play and I

4    may have to adjust the speed or the pressure on that spigot

5    and see what is going on.  It is a dynamic situation.

6           So that is at least the second time you have

7    perceived my approach and I don't know if that is because you

8    are trying to impress me with this glow of light, this halo

9    above your head that you have found some way to adjust

10   specifically for this hearing.  Do you have the same halo --

11   do you see that Ms. Ardizzone -- he is angelic appearance, I

12   don't know.

13          But continue with your statements, sir.

14          MR. LAZEROW:  I paid extra for that feature here on

15   Zoom.  Could I ask that the 2,000 page requirement commence

16   in February of 2021 and the reason for that is we are up

17   against the holidays now, it very well could be that the NIH

18   folks started working on this beforehand and I think to

19   produce almost 7 times what they have been in those two

20   weeks, we typically have been producing on the 16th of the

21   month, would be very difficult and I would ask the Judge to,

22   I would Your Honor to commence that 2,000 page requirement in

23   February.

24          THE COURT:  I will hear from Plaintiff.

25          MS. ARDIZZONE:  Your Honor, it is difficult to

1    consent to that request without KEI's director being here.  I

2    suspect he would say that he doesn't want to ruin anybody's

3    holiday and Your Honor is granting significant relief.  So I

4    unfortunately can't be in full agreement or denying to that

5    request however we do not vigorously disagree to that

6    request.

7              THE COURT:  Understood.  And I will grant the

8    request.  You will have until that time to begin.  And it may

9    require the marking of some resources that are not readily

10   available.  So I want to give you that opportunity.  Good.

11   So with that being said, I will leave it to the two of you to

12   submit something in terms of what we plan to do going forward

13   in terms of these progress reports, status reports or

14   whatever the case may be.  But I am hoping that it will be in

15   less than -- no more than two weeks out.  We can go with

16   that.

17             I won't be a stumbling block in terms of anything

18   that you two agree to.  I can't imagine that happening.  So

19   to the extent that you can give us a path forward, is a

20   pretty good chance that that is the path we will take.

21             MR. LAZEROW:  And just to be clear, what Your Honor

22   is envisioning in two weeks or so is a joint filing outlining

23   perhaps you know, an agreement  as to what will be contained

24   in these quarterly joint status reports and perhaps if there

25   is not an agreement outlining those positions.

1          THE COURT:  Yes.  As well as the timing that is,

2     when should I expect the first one and the ones thereafter?

3     And of course, anything else that you have in mind bring it

4     to my attention at that time as well and we will try to get

5     through.  Okay.  All right.  Anything further from the

6     Plaintiff?

7          MS. ARDIZZONE:  Your Honor, I know that we are

8     constrained on time and this didn't make it into our

9     presentation but we are concerned that the requests that I

10    mentioned before that has -- it originally had 15,000 pages

11    outstanding.  It has 11,000 pages outstanding and a large

12    number of pages each month has been publically available

13    documents.

14         We want to move things along and make this easier

15    for the Court and for the Defendant and for all parties

16    concerned, so we have asked to exclude publically available

17    documents.  But the NIH has not agreed to do so.  So, we ask

18    and that is -- is frankly astonishing to us and unreasonable.

19    It is -- justification was initially that doing so would not

20    appreciably reduce the page count.  But when that --- to be

21    true, one month we received 150 page package which can easily

22    reviewed online.

23         The Defendant asked us to propose a methodology for

24    determining what is publically available, which we provided.

25    Then he came back and said that it was difficult for it to

1   exclude or impossible for it to exclude publically available

2   documents because they would have to do a review. Obviously

3   it doesn't have to review publically available documents for

4   redactions, so I think it meant to say is we would have to do

5   a responsiveness review.

6          But this doesn't make sense either because any time

7   a party narrows the scope of a FOIA request during

8   litigation, which the public has the overwhelmingly favors

9   the parties doing, then they are getting a new scoped FOIA

10  request and there would be a new responsiveness to review.  A

11  new responsiveness review to perform to say this is no longer

12  a responsive document because we have narrowed the request.

13  That is why -- that is intrinsic to any narrowing.

14          So we continue to think that is unreasonable and

15  ask that the Court order the NIH to exclude publically

16  available documents from the scope of all FOIA requests.

17          THE COURT:  I want to hear from the Defense, but I

18  also ascribe generally to the notion that to the extent that

19  you two can narrow anything is going to be a good thing.  I

20  think I heard that from the Defense earlier and it certainly

21  will cut down the work load.  But Mr. Lazerow?

22          MR. LAZEROW:  Yes, this is a -- I don't want to say

23  a non-issue but a tiny issue.  I have relayed to Plaintiff's

24  Counsel and I will just read a sentence from an e-mail.  "As

25  for excluding publically available documents, as to the

1    documents each month are reviewed by the FOIA -- the FOIA

2    office has tried to remove such documents and will continue

3    to do so -- sorry to do their best to remove these records."

4            So the FOIA office is committed to doing that.  I

5    do think there needs to be some discussion as to what

6    constitutes a publically available document.  For instance,

7    an article that is behind a pay wall.  Is that publically

8    available?  Well, yes, sure if you pay for it, you can get

9    it.  Are we excluding that from the production or do we

10   include it because KEI might not be able to access it?

11           These are again just issues that I think need to be

12   worked out and you know, we are submitting something to the

13   Court in less than two weeks and perhaps -- there is going to

14   be collaboration and we should and will continue to

15   collaborate upon that issue.

16           THE COURT:  Good.  Well, it has been teed up and

17   hopefully I won't have to see it again.  But if so, then I

18   will address it as best as I can.  And as quickly as I can.

19   Okay.  That is -- anything else from the Plaintiff's side?

20           MS. ARDIZZONE:  Your Honor, I apologize, my video

21   just came out so I didn't hear the Defendant's entire

22   presentation.  My understanding was that the last

23   correspondence we had on this issue, the Defendant said it

24   could not exclude publically available documents because it

25   requires a responsiveness review.  So it couldn't make a

1  commitment to doing so.  We have provided parameters.  We

2  wish to be as reasonable as possible.

3        So I believe under our parameters, the payroll(sic)

4  article would not count as that because we discussed

5  documents being readily retrievable.  But we will continue --

6  we will work with the NIH as much as possible on this.  Then

7  I am pleased to hear that it is more willing to do this

8  narrowing than otherwise appeared.

9        THE COURT:  It sounds like the holiday spirit is

10  beginning.  This is good.

11        Mr. Lazerow, anything further from your end, sir?

12        MR. LAZEROW:  Nothing from NIH.

13        THE COURT:  Okay.  Well I thank you both for your

14  time and your attention and your advocacy and hope you have a

15  blessed season.  So, take care.

16        MR. LAZEROW:  Thank you.

17        MS. ARDIZZONE:  Thank you so much.

18        (Whereupon, the teleconference concluded.)

19

20

21

22

23

24

25

lnc                                                                                              40

<u>C E R T I F I C A T E</u>

      I certify that the foregoing is correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Lisa N. Contreras*    03-28-22
_____
Lisa N. Contreras              Date
Certified Transcriber
Certificate No.:  CET**D-1251